IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MATTHEW GOFORTH, an individual, <br> MALINDA GOFORTH, an individual, <br> MG MANAGEMENT CO., LLC, a Missouri limited liability company, and <br> MALINDA'S SUGAR AND SPICE, LLC, <br> A Missouri limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> TRANSFORM HOLDCO LLC, a Delaware limited liability company, <br> HOMETOWN MIDCO, LLC, a Delaware limited liability company, <br> ESL INVESTMENTS, INC., a Delaware Corporation, and <br> ESL PARTNERS, L.P., a Delaware limited Partnership, <br><br> Defendants. | Case No. 6:23-cv-03167 <br><br> ORAL ARGUMENT REQUESTED |

## SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................... 1
II. ALLEGED FACTS ................................................................................................. 2
III. LEGAL STANDARDS ........................................................................................... 4
    A.  Motion to Dismiss ......................................................................................... 4
    B.  Antitrust Claims ............................................................................................ 5
IV. ARGUMENT ........................................................................................................... 6
    A.  Plaintiffs Fail to Plead Any Effect on Interstate Commerce, Which
        Warrants Dismissal of Their Complaint. ...................................................... 6
    B.  Plaintiffs Suffered No Antitrust Injury. ........................................................ 7
    C.  Plaintiffs Fail to Plead that Defendants Restrained Trade. ......................... 10
        1.  None of the Defendants Actually Engaged in Any of the
            Complained-Of Conduct. ................................................................. 10
        2.  The Noncompete Provision At Issue Did Not Restrain
            Competition ...................................................................................... 11
    D.  Plaintiffs Fail to Plead Any Agreement Among Defendants, Which
        Warrants Dismissal of Plaintiff's Complaint. ............................................. 11
    E.  Plaintiffs Fail to Plead a Sufficient Relevant Market. ................................ 12
    F.  Plaintiffs' Claim is Barred by the Statute of Limitations. .......................... 14
V.  CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D.M. Corp. v. Sigma Instruments, Inc.*,
  628 F.2d 753 (1st Cir. 1980) ..................................................................................................9

*In re Canadian Imp. Antitrust Litig.*,
  470 F.3d 785 (8th Cir. 2006) .........................................................................................6, 8, 10

*Caremark Homecare, Inc. v. New England Critical Care, Inc.*,
  700 F. Supp. 1033 (D. Minn. 1988) ........................................................................................7

*Dunafon v. Del. McDonald's Corp.*,
  691 F. Supp. 1232 (W.D. Mo. 1988) .....................................................................................11

*Giordano v. Saks Incorporated*,
  No. 20-CV-833, 2023 WL 1451534 (E.D.N.Y. Feb. 1, 2023) ...............................................15

*Grand Rapids Plastics, Inc. v. Lakian*,
  188 F.3d 401 (6th Cir. 1999) .................................................................................................15

*Haines v. VeriMed Healthcare Network, LLC*,
  613 F. Supp.2d 1133 (E.D. Mo. 2009) ..........................................................................6, 8, 9

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
  797 F.3d 538 (8th Cir. 2015) ...................................................................................................5

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) .................................................................................................................6

*MG Management Co., LLC et al. v. Sears Authorized Hometown Stores, LLC*,
  No. 21-cv-0746 (N.D. Ill. 2021) .......................................................................................11, 12

*Miller v. Redwood Toxicology Lab'y, Inc.*,
  688 F.3d 928 (8th Cir. 2012) ...................................................................................................9

*New Orleans Ass'n of Cemetery Tour Guides and Cos. v. New Orleans
  Archdiocesan Cemeteries*,
  56 F.4th 1026 (5th Cir. 2023) ...........................................................................................6, 13

*Par v. Wolfe Clinic*,
  70 F.4th 441 (8th Cir. 2023) ..................................................................................................14

*Process Controls Intern., Inc. v. Emerson Process Mgmt.*,
  No. 4:10-cv-645, 2011 WL 403121 (E.D. Mo. Feb. 1, 2011) ................................................14

*In re: Sears Authorized Hometown Stores, LLC*,
    No. 22-11303 (LSS) (Bankr. Del. Dec. 12, 2022) ...................................................................1

*Sears Authorized Hometown Stores, LLC v. MG Management Co., LLC et al.*
    No. 1:20-cv-02207 (N.D. Ill. 2020) ................................................................................11, 12

*In re Sears Hometown Stores, Inc.*,
    No. 22:11304 (LSS) (Bankr. Del. Dec. 12, 2022) ...................................................................1

*Sitzer v. Nat'l Ass'n of Realtors*,
    420 F. Supp.3d 903 (W.D. Mo. 2019) ....................................................................................5

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ..............................................................................................15

*Ventimiglia v. AT & T Yellow Pages*,
    543 F. Supp.2d 1038 (E.D. Mo. 2008)........................................................................6, 10, 12

*Wholesale Alliance, LLC v. Express Scripts, Inc.*,
    366 F. Supp.3d 1069 (E.D. Mo. 2019)............................................................................4, 5, 6

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ................................................................................................15

**Statutes**

15 U.S.C. § 15b..............................................................................................................................14

**I.     INTRODUCTION**

Plaintiffs Matthew Goforth, Malinda Goforth, MG Management Co., LLC, and Malinda's Sugar and Spice, LLC (collectively, "Plaintiffs") allege that Hometown Midco LLC, Transform Holdco LLC, ESL Investments, Inc., and ESL Partners, L.P. (collectively, "Defendants") violated Section 1 of the Sherman Act based on the presence of a noncompete provision in a so-called Dealer Agreement between Plaintiffs and a completely separate non-party, Sears Authorized Hometown Stores, LLC ("SAHS").[1]  Besides suing the wrong entity, Plaintiffs have failed to allege an actionable antitrust claim for multiple reasons.

*First*, Plaintiffs do not allege any impact on interstate commerce, and in fact, their Complaint affirmatively pleads that the effects of the alleged conduct were confined to a "local" market that only "encompasses Bolivar, Missouri."  Because Plaintiffs have not alleged and cannot prove impact on interstate commerce, their Section 1 claim fails as a matter of law.

*Second*, although Plaintiffs allege that they suffered individual injury, they do not allege that the noncompete provision in their Dealer Agreement with SAHS caused harm to competition more broadly.  And, in any case, Plaintiffs' injury was the result of action by a third party, not Defendants.  Plaintiffs thus have not suffered antitrust injury and, as a result, lack antitrust standing.

*Third*, none of the named Defendants were parties to the contract at issue, and none were responsible for enforcing the allegedly illegal noncompete provision.  Plaintiffs thus have not alleged that Defendants restrained trade in violation of the antitrust laws.

---

[1]     SAHS filed for Chapter 11 bankruptcy on December 12, 2022.  *See In re: Sears Authorized Hometown Stores, LLC*, No. 22-11303 (LSS) (Bankr. Del. Dec. 12, 2022); *In re Sears Hometown Stores, Inc.*, No. 22:11304 (LSS) (Bankr. Del. Dec. 12, 2022).

1

***Fourth***, an agreement among competitors is an essential requirement of a Sherman Act Section 1 violation. Plaintiffs' Complaint fails to allege any such agreement, which dooms their claim.

***Fifth***, Plaintiffs' claim is subject to the rule of reason, which requires a factfinder to weigh all of the circumstances when deciding whether a practice is anticompetitive. Because they have not adequately pled a relevant product and geographic market, as is required under the rule of reason, their claim cannot succeed.

***Finally***, Plaintiffs claim arises out of an alleged noncompete provision that was inserted in 2012 into an existing Dealer Agreement, which Plaintiffs later assumed in 2016. Plaintiffs' claim on its face is barred by the applicable four-year statute of limitations.

Each of these defects justifies dismissal of Plaintiffs' Complaint. Because these defects are foundational, any amendment would be futile, so Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## II. ALLEGED FACTS

Plaintiff Malinda's Sugar and Spice, LLC owns and operates a retail business that sells "new major home appliances" in Bolivar, Missouri. Compl. ¶ 2. Malinda's Sugar and Spice, LLC is owned by Plaintiffs Matthew and Malinda Goforth. Compl. ¶ 1. MG Management Co., LLC operated a Sears Hometown Store in Bolivar from 2016 to approximately July 2019. Compl. ¶ 3. MG Management Co., LLC is also owned by Matthew and Malinda Goforth. Compl. ¶ 1.

Defendant Hometown Midco LLC ("Midco") [2] owns 45% of the shares of non-party Sears Hometown Stores, Inc., which wholly owns non-party SAHC. Compl. ¶ 5. Defendant Transform

---

[2] Plaintiffs' Complaint erroneously describes the ownership structure of Defendants Hometown Midco LLC and Transform Holdco LLC. Plaintiffs allege that Midco is wholly owned and controlled by Transform Holdco LLC, when, in fact, it is wholly owned and controlled by Hoffman Topco LLC. Similarly, Defendant Transform

Holdco LLC is a Delaware limited liability company. Compl. ¶ 6. Defendant ESL Investments, Inc., is a Delaware corporation, and Defendant ESL Partners, L.P. is a Delaware partnership. Compl. ¶ 7. SAHS—which was the actual party to the Dealer Agreement—is not a Defendant in this action.

Sears Hometown Stores were first opened in 1993 for the purpose of selling appliances to consumers in rural markets. Compl. ¶ 14. Sears Hometown Stores were independently owned and operated. Compl. ¶ 16. Plaintiffs alleged that, under the SAHS Dealer Agreement, the costs of ownership and occupancy of the business are borne by independent dealers, while SAHS retains ownership of the merchandise. Compl. ¶ 16. SAHS supplied the merchandise to the store owner on a consignment basis, and then paid the store owner a variable commission for each appliance sale. Compl. ¶16.

The SAHS Dealer Agreement contained a noncompete provision that allegedly was added in or around 2012. Compl. ¶¶ 24-25. The noncompete provision provides that for a period of at least two years following the expiration of the agreement, the store owner agrees not to compete, directly or indirectly, with any "Competing Business" within 50 miles of any Business. Compl. ¶ 29. "Competing Business" is defined as a business that sells anything similar to the products sold by both Sears Hometown and Outlet Stores, Inc. and SAHS. Compl. ¶ 30.

Plaintiff Matthew Goforth purchased an existing Hometown Store in Bolivar, Missouri in 2016. Compl. ¶ 12. The contract between Matthew Goforth and SAHS contained the noncompete provision. Compl. ¶ 38. The Dealer Agreement expired on July 6, 2019. Compl. ¶ 38. During the months leading up to the expiration of the Dealer Agreement with SAHS, Plaintiffs prepared to open Goforth Home & Lawn in the same location as Goforth's Hometown Store. Compl. ¶ 46.

---

Holdco LLC is not wholly owned and controlled by ESL Investments, Inc., as alleged by Plaintiffs, but is actually wholly owned and controlled by Hoffman Topco LLC.

On June 7, 2019, SAHS commenced an arbitration proceeding to enforce the noncompete provision against Plaintiffs. Compl. ¶ 47. Before the arbitration concluded, Plaintiffs opened Goforth Home & Lawn on November 8, 2019. Compl. ¶ 49. On November 20, 2019, SAHS was granted emergency interim relief enforcing the noncompete provision. Compl. ¶ 50. Plaintiffs appealed the interim award, and the interim award was affirmed on March 16, 2020. Compl. ¶ 50. On September 23, 2020, a final arbitration award was entered that enforced the noncompete provision. Compl. ¶ 54. On January 14, 2021, an appellate arbitrator reversed and held that the noncompete provision was unenforceable. Compl. ¶ 55. Goforth Home & Lawn reopened in April 2021. Compl. ¶ 60.

Seeking to recover damages for the time when their store was closed due to the arbitration decision, Plaintiffs allege that the noncompete provision violates Section 1 of the Sherman Act because, according to Plaintiffs, it restrained trade in the relevant market. Compl. ¶¶ 61-70. The geographic market alleged by Plaintiffs is "local" and "encompasses" only Bolivar, Missouri. Compl. ¶ 42. The product market Plaintiffs allege is comprised of "major home appliances" categorized into four groups based on the function of each appliance: dishwashers, laundry, cooking, and refrigeration. Compl. ¶ 41.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

"To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Wholesale Alliance, LLC v. Express Scripts, Inc.*, 366 F. Supp.3d 1069, 1076 (E.D. Mo. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court "accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party" it is not "'bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be

enough to raise a right to relief above the speculative level.'" *Id.* (citing *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017)). Antitrust claims are not subject to a heightened pleading standard, but "'[g]iven the unusually high cost of discovery in antitrust cases, the limited success of judicial supervision in checking discovery abuse, and the threat that discovery expense will push cost-conscious defendants to settle even anemic cases, the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage.'" *Id.* (citing *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015)).

### B. Antitrust Claims

For any claim under the antitrust laws to succeed, the conduct challenged must have an effect on interstate commerce. *See Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp.3d 903, 911 (W.D. Mo. 2019). An antitrust plaintiff must also demonstrate antitrust standing, which "'is somewhat different from that of standing as a constitutional doctrine.'" *Insulate SB, Inc.*, 797 F.3d at 542 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983)). The threshold requirement of antitrust standing is more rigorous than Article III standing, and courts "must[] reject claims under [Federal Rule of Civil Procedure] 12(b)(6) when antitrust standing is missing." *Id.* at 542 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007)). "[T]o demonstrate standing, a plaintiff must plausibly plead 'that he has suffered an antitrust injury,' which is an 'injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Wholesale Alliance*, 366 F. Supp.3d at 1076-77 (citing *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006)).

Beyond those threshold elements, a plaintiff seeking relief under Section 1 of the Sherman Act "must demonstrate (1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade; and (3) that the restraint affected interstate commerce."

5

*Wholesale Alliance*, 366 F.Supp.3d at 1076 (citation omitted). In other words, "[i]n order to succeed on a claim under this section, Plaintiff must show that Defendants' antitrust conduct stemmed from an agreement, tacit or express, among competitors, that had an unreasonable restraint on trade." *Ventimiglia v. AT & T Yellow Pages*, 543 F. Supp.2d 1038, 1042 (E.D. Mo. 2008).

"The unreasonableness of a restraint is determined using either a *per se* standard or a standard that examines all of the circumstances, the so-called rule of reason. Examples of restraints that violate the *per se* standard include price fixing, tying arrangements, and group boycotts. Most agreements are evaluated under the rule of reason, a standard that asks whether the contract unreasonably restraints trade in a relevant product or geographic market. Ultimately, the goal is to determine whether restrictions in an agreement among competitors potentially harms consumers." *Haines v. VeriMed Healthcare Network, LLC*, 613 F. Supp.2d 1133, 1136 (E.D. Mo. 2009) (citations omitted). "Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (citation omitted). In a rule of reason case, the failure to properly allege a relevant market bars the claim. *New Orleans Ass'n of Cemetery Tour Guides and Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1037 (5th Cir. 2023).

## IV.  ARGUMENT

### A.  Plaintiffs Fail to Plead Any Effect on Interstate Commerce, Which Warrants Dismissal of Their Complaint.

It is black-letter law that "[s]ome allegation of ultimate facts showing a restraint on interstate commerce is required and the absence of such allegations justifies dismissal." *Caremark*

*Homecare, Inc. v. New England Critical Care, Inc.*, 700 F. Supp. 1033, 1035 (D. Minn. 1988). Plaintiffs fail to allege an effect on interstate commerce, so dismissal is warranted.

In *Caremark*, the court dismissed a Section 1 counterclaim premised on a noncompete agreement where defendants' only allegation regarding interstate commerce was that plaintiff "has unreasonably restrained trade in interstate commerce" by requiring its employees to sign an overbroad noncompete agreement. *Id.* at 1035. Here, Plaintiffs' Section 1 claim is entirely premised on the noncompete provision of the Dealer Agreement entered into between Plaintiffs and SAHS in Missouri. There are no allegations detailing how the noncompete had any effect on interstate commerce. *See* Compl. ¶¶ 39-45. Indeed, Plaintiffs' Complaint does not even have the type of conclusory allegation that the court in *Caremark* found lacking.

Notably, Plaintiffs go to great lengths to emphasize the "local nature" of their claim, alleging that consumers often refuse to travel the 30 miles to Springfield, Missouri, to shop at competing stores. Compl. ¶ 39. Because Plaintiffs have failed to allege an effect on interstate commerce—and their affirmative allegations suggest that the challenged conduct only had effects within the boundaries of Missouri—Plaintiffs' claim fails as a matter of law.

### B. Plaintiffs Suffered No Antitrust Injury.

Plaintiffs have failed to allege antitrust injury because (1) they only allege that the challenged noncompete provision had an effect on them, rather than the market more broadly; and (2) even the harm they allegedly suffered individually was caused by an intervening third-party decision maker, and not Defendants. Each of these flaws is dispositive.

#### 1. Plaintiffs Do Not Allege Market-Wide Injury.

To bring an antitrust claim, "a private plaintiff must demonstrate that he has suffered an antitrust injury as a result of the alleged conduct of the defendants, and that he has standing to pursue a claim under the federal antitrust laws." *In re Canadian Import Antitrust Litig.*, 470 F.3d

7

at 791 (citation omitted). Antitrust injury is "an 'injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). "The requisite antitrust injury must reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation, and represent the type of loss that the claimed violations would be likely to cause." *Id.* at 791 (citation omitted).

The court's antitrust injury analysis of a different type of noncompete agreement in *Haines v. VeriMed Healthcare Network, LLC*, 613 F. Supp.2d 1133 (E.D. Mo. 2009) is instructive. In *Haines,* the defendant, VeriMed, was a medical content provider for websites, while the plaintiff, Haines, was a medical doctor who worked as an independent contractor and supplied written content for publication on medical websites. *Id.* at 1134. The plaintiff supplied articles to VeriMed, but also started working with another web content provider, The HealthCentral Network ("THCN"). *Id.* at 1135. Unbeknownst to Haines, THCN was also a client of VeriMed. *Id.* In THCN's contract with VeriMed, THCN agreed not to work with any present or former VeriMed members. *Id.* When THCN learned that Haines was an independent contractor working for VeriMed, it terminated its relationship with Haines. *Id.* Haines, like Plaintiffs in this case, alleged that the agreement between THCN and VeriMed was an unlawful restraint on trade in violation of Section 1 of the Sherman Act. *Id.* The court dismissed Haines's claim, holding that the noncompete did not cause antitrust injury inasmuch as it only impacted Haines, a single plaintiff. *Id.* at 1139. As the *Haines* court explained, the antitrust laws "are not designed to redress this type of . . . injury to a single plaintiff. They are designed to redress the injuries of consumers when an entire market is unlawfully constrained. The 'essential connection' between Haines' injury and

the aims of the antitrust laws is missing in this case." *Id.* (citing *A.D.M. Corp. v. Sigma Instruments, Inc.*, 628 F.2d 753, 754 (1st Cir. 1980)).

The same is true here. Plaintiffs' alleged injury stems from the enforcement of the noncompete provision in the Dealer Agreement between Plaintiffs and SAHS. Perversely, Plaintiffs complain that they were unable to maintain their monopoly in Bolivar following the expiration of their Dealer Agreement with SAHS. *See, e.g.*, Compl. ¶13. This is precisely the type of single plaintiff injury the antitrust laws were *not* designed to address, and it lacks the "essential connection" to the aims of the antitrust laws that is necessary to establish antitrust injury. *See A.D.M. Corp.*, 628 F.2d at 754.

In fact, the very nature of the Dealer Agreement—an agreement between SAHS and one individual Sears Hometown store operator—means that SAHS only had the ability to prevent Plaintiffs, and no one else, from entering the market for a limited period of time. In the absence of any allegation that the noncompete caused competitive injury to the market as a whole, Plaintiffs cannot establish antitrust injury, which warrants dismissal of the Complaint.

### 2. Plaintiffs' Injury Was Caused by a Third Party.

Antitrust injury is also lacking where a plaintiff's alleged harm is caused by something other than Defendants' alleged conduct—such as the decision making of a third-party. *See, e.g., Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 935 (8th Cir. 2012) (citations omitted) ("When the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry.") *See also In re Canadian Import Antitrust Litig.*, 470 F.3d at 791 (holding that plaintiffs did not establish antitrust standing where the absence of competition was caused by a federal regulatory and statutory scheme, and not by the conduct of the defendants).

9

Here, Plaintiffs' alleged harm flows directly from the arbitrator's decision on the motion for emergency interim relief and the affirmance of that decision on appeal. Compl. ¶ 50. Had the decision come out the other way, Plaintiffs would not have suffered the harm they allege. The arbitrator's decision thus breaks the causal chain and is yet another reason that Plaintiffs are incapable of establishing antitrust injury.

### C. Plaintiffs Fail to Plead that Defendants Restrained Trade.

Plaintiffs must prove that Defendants actually engaged in anticompetitive conduct to establish a violation of Section 1 of the Sherman Act. *Ventimiglia v. AT & T Yellow Pages*, 543 F. Supp.2d 1038, 1042 (E.D. Mo. 2008). Plaintiffs' Section 1 claim fails because (1) none of the Defendants actually engaged in any of the conduct at issue, and (2) the noncompete provision of the Dealer Agreement is not anticompetitive within the meaning of the Sherman Act.

#### 1. None of the Defendants Actually Engaged in Any of the Complained-Of Conduct.

To establish liability under Section 1 of the Sherman Act, Plaintiffs must establish that each Defendant actually engaged in anticompetitive conduct. *See Ventimiglia*, 543 F. Supp.2d at 1042 (granting motion to dismiss where Plaintiffs failed to allege any conduct by Defendants to support liability under Section 1). Plaintiffs have failed to do so here.

Simply put, none of the four Defendants in this case—Hometown Midco LLC, Transform Holdco LLC, ESL Investments, Inc., and ESL Partners, L.P.—are parties to the Dealer Agreement that Plaintiffs claim included the allegedly unlawful noncompete provision. The only party to the Dealer Agreement, SAHS, is not a Defendant in this case.

Nor do Plaintiffs allege that any of the Defendants actually sought to enforce the noncompete provision of the Dealer Agreement. Compl. ¶¶ 47-48. As Plaintiffs are well aware, SAHS was the entity that sought to enforce the noncompete provision through an arbitration

proceeding. Compl. ¶ 47; *see also Sears Authorized Hometown Stores, LLC v. MG Management Co., LLC et al.* No. 1:20-cv-02207 (N.D. Ill. 2020) (SAHS suing Plaintiff MG Management Co. to overturn appellate arbitration award and confirm initial arbitration award); *see also MG Management Co., LLC et al. v. Sears Authorized Hometown Stores, LLC*, No. 21-cv-0746 (N.D. Ill. 2021) (Plaintiff MG Management Co. suing SAHS to confirm appellate arbitration award). Because Plaintiffs do not and cannot allege that any of the Defendants actually engaged in any anticompetitive conduct, their Complaint should be dismissed.

### 2. The Noncompete Provision At Issue Did Not Restrain Competition.

Plaintiffs also fail to allege that the noncompete provision restrained competition within the meaning of Section 1 of the Sherman Act. "'Section 1 of the Sherman Act is concerned with *restraints* on competition, and the competition with which the Act is concerned is more than that contributed by the plaintiff. To amount to an unreasonable restraint of trade, the anticompetitive conduct must have an effect greater than its effect upon plaintiff's business.'" *Dunafon v. Del. McDonald's Corp.*, 691 F. Supp. 1232, 1242 (W.D. Mo. 1988) (quoting *Gough v. Rossmoore Corp.*, 585 F.2d 381, 386 (9th Cir. 1978)). That is to say "[p]laintiff must show how competitive conditions in the market as a whole have been substantially affected by the covenant." *Dunafon*, 691 F. Supp. at 1242.

According to Plaintiffs' Complaint, Plaintiffs were briefly prevented from operating their business after the expiration of the Dealer Agreement. Compl. ¶¶ 47-50. Plaintiffs' business was the only entity so affected. The noncompete provision of the Dealer Agreement had no effect on the market as a whole. Because the conduct at issue only affected Plaintiffs' business, Plaintiffs have not alleged a restraint of trade within the meaning of Section 1.

### D. Plaintiffs Fail to Plead Any Agreement Among Defendants, Which Warrants Dismissal of Plaintiff's Complaint.

A foundational requirement for Section 1 claims is an agreement among competitors and a Section 1 claim that fails to allege such an agreement must be dismissed. *See Ventimiglia*, 543 F. Supp.2d at 1042 (dismissing Section 1 claim for failure "to allege facts that could support a finding of an agreement . . . to engage in anti-competitive behavior.").

Despite Plaintiffs' vague allegations of various non-parties' motivations to include the noncompete provision in the Dealer Agreement, Plaintiffs' Complaint is entirely devoid of any allegations of any agreement among competitors. Compl. ¶¶ 17-37. As a threshold matter, none of the Defendants are competitors in any relevant market. Additionally, there are no allegations that any of the Defendants agreed to include the noncompete provision in the Dealer Agreement, or to enforce the noncompete provision. Defendants are not parties to the Dealer Agreement with Plaintiffs and are not alleged to have been involved in the decision by SAHS to enforce the noncompete provision. The complete absence of any of the Defendants from either of the federal cases related to the enforcement of the noncompete provision in the Dealer Agreement confirms this fact. *See Sears Authorized Hometown Stores, LLC v. MG Management Co., LLC et al.* No. 1:20-cv-02207 (N.D. Ill. 2020); *see also MG Management Co., LLC et al. v. Sears Authorized Hometown Stores, LLC*, No. 21-cv-0746 (N.D. Ill. 2021). The only agreement identified in Plaintiffs' Complaint is the agreement Plaintiffs entered into with SAHS. That agreement cannot serve as the basis for a Section 1 claim against Defendants.

**E.      Plaintiffs Fail to Plead a Sufficient Relevant Market.**

Plaintiffs' Complaint should also be dismissed because Plaintiffs fail to plead a properly-defined relevant market. Despite Plaintiffs' conclusory assertions, the noncompete provision in the Dealer Agreement is not a "naked horizontal restraint," (Compl. ¶ 13) but instead is a vertical agreement. *See New Orleans Ass'n of Cemetery Tour Guides and Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035-36 (5th Cir. 2023) (noting that horizontal

agreements are "agreements between competitors" while vertical agreements are "those between entities at different levels of distribution"). The only agreement alleged in the Complaint is the Dealer Agreement between SAHS and Plaintiffs that was made while Plaintiff was operating a Sears Hometown store. Under that agreement, SAHS retains ownership over the merchandise and supplies it to the store owner on a consignment basis, and then pays the store owner a variable commission for merchandise sales. Compl. ¶¶ 14-16. In that context, the parties are not competitors; they are entities operating at different levels of the distribution chain. So, the Dealer Agreement is indisputably vertical, which means that the rule of reason applies.

In a rule of reason antitrust case, Plaintiffs are required to plead a relevant product and geographic market, or face dismissal. *New Orleans*, 56 F.4th at 1037 (citing *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002)). To comply with this requirement, Plaintiffs must allege a relevant product market that specifically includes "all commodities reasonably interchangeable by consumers for the same purpose" and consider "interchangeability and cross-elasticity of demand." *Id.* (citations omitted).

Here, Plaintiffs' proposed product market is implausible on its face. Plaintiffs define the relevant product market as "major home appliances" and then inexplicably limit the market to "dishwashers, laundry, cooking, and refrigeration." Compl. ¶ 41. Plaintiffs exclude "small appliances" because "a vacuum or a toaster is not reasonably interchangeable with a dryer or a refrigerator." Compl. ¶ 41. Plaintiffs' product categories lack definition and are inconsistent. Dishwashers and refrigeration seemingly refer to single appliances, while "laundry" and "cooking" could conceivably encompass many different appliances. It is also not clear why these four "categories" have been singled out for inclusion while other home appliances have been excluded. As for interchangeability and cross-elasticity of demand, Plaintiffs merely allege that the "relevant

product market does not include products such as small appliances because a vacuum or a toaster is not reasonably interchangeable with a dryer or refrigerator." Compl. ¶ 41. These conclusory allegations are plainly insufficient to establish a proper relevant product market. *See Process Controls Intern., Inc. v. Emerson Process Mgmt.*, No. 4:10-cv-645, 2011 WL 403121, at *4 (E.D. Mo. Feb. 1, 2011) (rejecting plaintiff's conclusory allegations about product interchangeability as insufficient to establish product market).

Plaintiffs' alleged geographic market fares no better. The Complaint simply alleges that the relevant geographic market is "local" and "encompasses" Bolivar, Missouri. Compl. ¶ 42. And while Plaintiffs plead that consumers "prefer" local retailers and in-person shopping experiences, they do not allege why that preference is sufficient to exclude nearby retailers in Springfield from the relevant geographic market, or why online retailers should not be considered to be in the relevant market. Plaintiffs' failure to allege these facts dooms their proposed geographic market and requires dismissal of their claims. *See Par v. Wolfe Clinic*, 70 F.4th 441, 448-49 (8th Cir. 2023) (affirming dismissal of antitrust claim based on insufficient geographic market and observing that the "proper inquiry is not where customers *prefer* to travel, but instead, where there are actual alternatives for services").

### F. Plaintiffs' Claims are Barred by the Statute of Limitations.

Plaintiffs' claim is governed by the Clayton Act's four-year statute of limitations. 15 U.S.C. § 15b. In this case, the statute of limitations has expired because it began to run when Plaintiffs signed the contract that contained the noncompete provision. *See Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 604 (6th Cir. 2014) (affirming district court's dismissal and holding that the statute of limitations began to run when the merger agreement containing the noncompete was originally entered into, not when the noncompete was enforced). Enforcement of the noncompete provision through an arbitration proceeding does not restart the statute of limitations.

*See Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004) (affirming dismissal of antitrust claim and holding that mere enforcement of the initial contract does not toll the four-year statute of limitations); *see also Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999) (holding that individual payments "were only a manifestation of the previous agreement" and "do not constitute a 'new and independent act' as required by the statute of limitations"); *Giordano v. Saks Incorporated*, No. 20-CV-833, 2023 WL 1451534, at *7 (E.D.N.Y. Feb. 1, 2023) (holding that the actions taken by defendants in performance of their no-hire agreement were not independent overt acts, but merely the performance of the contract, and that the decision to enter the contract is the overt act that starts the statute of limitations).

Plaintiffs allege that Mr. Goforth signed a contract with SAHS to operate a Sears Hometown Store in Bolivar when he purchased an existing business in 2016. Compl. ¶ 38. Thus, the four-year statute of limitations began to run at the latest on December 31, 2016, and expired on December 31, 2020. SAHS's decision to enforce the noncompete provision of the Dealer Agreement does not constitute a continuing violation, but merely constitutes the performance of the original contract. As such, Plaintiffs' Section 1 claim is time barred.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in full and with prejudice.

Dated:  October 23, 2023  Respectfully submitted,

/s/ *Jonathan Benevides*
Jonathan Benevides    MO No. 61594
BAKER STERCHI COWDEN & RICE, LLC
Pershing Road, Suite 500
Kansas City, MO  64108
Telephone:     816-471-2121
Facsimile:     816-472-0288
benevides@bscr-law.com

R. Brendan Fee (*pro hac vice*)
Dennie B. Zastrow (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  215-963-5000
Facsimile:   215-963-5001
brendan.fee@morganlewis.com
dennie.zastrow@morganlewis.com

*Attorneys for Defendants Transform Holdco, LLC, Hometown Midco, LLC, ESL Investments, Inc., and ESL Partners, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2023, the foregoing was filed electronically using this Court's CM/ECF filing system, which sent notification of such filing to all counsel of record.

*/s/ Jonathan E. Benevides*