**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MATTHEW GOFORTH, an individual, | ) | |
| MALINDA GOFORTH, an individual, | ) | |
| MG MANAGEMENT CO., LLC, a | ) | |
| Missouri limited liability company, and | ) | |
| MALINDA's SUGAR AND SPICE, LLC, | ) | |
| a Missouri limited liability company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:23-cv-03167-MDH |
| | ) | |
| TRANSFORM HOLDCO LLC, | ) | |
| a Delaware limited liability company, | ) | |
| HOMETOWN MIDCO, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| ESL INVESTMENTS, INC., | ) | |
| a Delaware Corporation, and | ) | |
| ESL PARTNERS, L.P., a Delaware | ) | |
| limited Partnership, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons herein, Defendants' Motion is **DENIED**.[1]

**BACKGROUND**

Plaintiffs' allegations generally concern whether enforcement of a noncompete agreement violates Section One of the Sherman Act.[2] Plaintiffs Malinda and Matthew Goforth own MG

---

[1] Also before this Court are Plaintiffs' unopposed motion for judicial notice of two relevant arbitration awards, which this Court **GRANTS**, and motion for extension of time for amended pleadings, which this court finds as **MOOT**, since Defendants' motion to dismiss is hereby denied.

[2] This background section derives wholly from factual allegations in Plaintiff's Complaint. Nothing herein reflects a finding of fact on the part of this Court.

1

Management Co., LLC and Malinda's Sugar and Spice, LLC. Malinda's Sugar and Spice owns and operates a retail business selling home appliances in Bolivar, Missouri under the name of Goforth Home and Lawn. MG Management Co., LLC operated a Sears Hometown Store in Bolivar until 2019. Defendant ESL Investments, Inc. owns approximately forty-seven percent of non-parties Sears Hometown Stores, Inc. and Sears Authorized Hometown Stores, LLC ("SAHS"). ESL also wholly owns Defendant Transform Holdco, LLC, Transform in turn owns Hometown Midco, LLC, who owns approximately forty-five percent of non-party Sears Hometown Stores, Inc. Sears Hometown Stores, Inc. wholly owns non-party Sears Authorized Hometown Stores, LLC.

Sears Hometown Stores began operating around 1993 with the purpose of selling home appliances to people in rural areas, who often lacked direct access to big-box stores in more populated markets. Sears Hometown Stores were independently owned and operated. The Dealer Agreement was a contract that helped define the relationship between SAHS and those individual owners of Sears Hometown Stores. Pursuant to the Dealer Agreement, SAHS owned and supplied merchandise to the store owner who received a commission for the sales.

Sometime around 2012, SAHS, at the direction of non-party Eddie Lampert, who wholly owns and controls ESL, added a post-expiration noncompete clause to the Dealer Agreement. The specific intent behind the addition of this clause, Plaintiffs allege, was to reduce future competition, in anticipation of an increased rate of closures among Sears Hometown Stores. Defendants wanted to protect their own business interests against the threat of Sears Hometown Store owners closing their Sears-affiliated stores and then reopening their own home appliance stores. The expectation of additional Sears Hometown Store closures was based on Lampert and Defendants' knowledge that Sears Holding Corp. was likely heading for bankruptcy. The noncompete clause at issue

2

appeared in Section 18.5 of the Dealer Agreement and, in effect, prohibited any former store owner and their family members from competing with Sears Hometown Stores and Sears Holding Corp. for a period of at least two years anywhere in the United States.

Plaintiff Matthew Goforth purchased a Sears Hometown Store in Bolivar, Missouri during 2016. The Dealer Agreement between Matthew Goforth and SAHS included the noncompete clause at issue. Mattthew Goforth's Dealer Agreement with SAHS was scheduled to expire July 6, 2019. During the months leading up to that expiration, Matthew Goforth was planning to open his own home appliance business—Goforth Home and Lawn—in Bolivar. On June 7, 2019, SAHS commenced an arbitration proceeding against Matthew Goforth to enforce the post-expiration non-compete agreement and prevent the opening of Goforth Home and Lawn. While arbitration was pending, Goforth Home and Lawn opened on November 8, 2019. On November 20, 2019, SAHS was granted emergency interim relief to enforce the noncompete agreement and Goforth Home and Lawn closed. The interim award was affirmed on March 16, 2020. On September 23, 2020 a final arbitration award was entered, enforcing the noncompete agreement. On January 14, 2021, an appellate arbitrator reversed, finding the noncompete agreement unenforceable. Goforth Home and Lawn reopened in April 2021.

Plaintiffs' Complaint seeks damages corresponding to the time Goforth Home and Lawn was closed, alleging violations of the Sherman Act, Section One.

## STANDARD

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations

3

contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Further, Eighth Circuit courts are particularly reluctant to dismiss an antitrust suit at the pleadings stage, as "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998) (citations omitted).

## DISCUSSION

Defendants make six arguments in support of their motion: 1) Plaintiffs failed to allege impact on interstate commerce; 2) Plaintiffs failed to allege harm to competition; 3) no named defendant was party to the noncompete agreement and no named defendant enforced such the noncompete agreement; 4) Plaintiffs fail to allege the existence of an agreement among competitors; 5) Plaintiffs failed to adequately plead a relevant product and geographic market; and 6) Plaintiffs' claim is barred by the statute of limitations. This Court will address each argument in turn.

4

## I. Plaintiffs sufficiently alleged an impact on interstate commerce

Defendants argue that Plaintiffs failed to sufficiently allege the requisite impact on interstate commerce. To establish a violation of Section 1 of the Sherman Act, "a plaintiff must demonstrate (1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade; and (3) that the restraint affected interstate commerce." *Wholesale All., LLC v. Express Scripts, Inc.*, 366 F. Supp. 3d 1069, 1076 (E.D. Mo. 2019). To establish a nexus with interstate commerce, a plaintiff must "allege the relationship between the activity involved and some aspect of interstate commerce …or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce. *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 232–33 (1980). To establish such an impact, it is sufficient "for petitioners to demonstrate a substantial effect on interstate commerce generated by [the complained-of activity]. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged [violations]." *Id.* at 242-43. The Complaint satisfies this element in several ways, notably, and perhaps most directly, because the non-compete agreement at issue allegedly prevented Plaintiffs from selling home appliances anywhere in the United States for a two-year period. (Doc. 1 at ¶¶ 28-31). Additionally, the noncompete clause appeared in boilerplate Dealer Agreement language that became standard around 2012. (Doc. 1 at ¶¶ 27, 28). This is a sufficient allegation of interstate commerce impact.

## II. Plaintiffs have sufficiently pled an antitrust injury

Defendants next contend that Plaintiffs have failed to allege a relevant antitrust injury. To successfully plead a Sherman Act violation, plaintiffs must allege "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive

acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Put differently, "The antitrust laws…are designed to redress the injuries of consumers when an entire market is unlawfully constrained." *Haines v. VeriMed Healthcare Network, LLC*, 613 F. Supp. 2d 1133, 1139 (E.D. Mo. 2009). Plaintiffs Complaint alleges the following.

> [The] post-expiration noncompete restriction ensured that SAHS could "hold the markets open" and keep them free from competition by former store owners as SAHS' stores began closing because of SHC's future bankruptcy. The restraint of trade was designed to prevent SAHS from losing rural market share until Lampert could reacquire SAHS and combine it with SHC under Transform's ownership. The post-expiration non-compete appeared in Section 15.8 of SAHS's store contracts during the time that Goforth was operating a Hometown Store in Bolivar. The post-expiration noncompete restriction effectively prohibited any former store owner along with their family from competing against SHOS or SHC anywhere in the United States for at least two years. (Doc. 1 at ¶¶ 27, 28).

Plaintiffs argue that "a competitor's exclusion from the market 'is a conventional form of antitrust injury', *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984), that would result from a defendant's enforcement of an agreement not to compete on the basis of products and markets." (Doc. 30 at 31). Defendants, on the other hand, contend that Plaintiffs have misunderstood the nature of an antitrust injury, arguing Plaintiff has alleged only a personal injury. This Court agrees that Plaintiffs' allegations in this regard remain thin, but the contention in paragraph twenty-eight of the Complaint makes sufficiently clear that the noncompete agreement at issue appeared in boilerplate language in SAHS's Dealer Agreements starting around 2012, indicating Plaintiffs have pled an anticompetitive injury sufficient to survive at the pleadings stage.

### III.    Plaintiffs have sufficiently alleged liability on the part of Defendants

Defendants next contend that Plaintiffs have failed to allege any specific acts on the part of Defendants that caused enforcement of the noncompete agreement. More specifically, Defendants argue that the arbitrator, not Defendants, enforced  the noncompete agreement, suggesting absence

6

of causation. This Court disagrees. While the arbitrator may have played a role in enforcement, the parties involved in formation and execution of the noncompete agreement are at least arguably responsible for any antitrust violations. Additionally, Plaintiff's Complaint makes clear SAHS sought enforcement through arbitration.

## IV. Plaintiffs adequately pled Defendants restrained trade

Defendants' fourth argument is that none of the four named Defendants is party to the Dealer Agreement, which involves only Plaintiffs and SAHS. Though this Court agrees that Plaintiff's allegations on this issue are general and, at times, cumbersome, the Complaint adequately alleges an agency relationship between SAHS and named Defendants that could conceivably make Defendants liable. The Complaint sufficiently alleges, at least for the 12(b)(6) stage, Defendants' dominion and control over SAHS, an agency relationship between Defendants and SAHS, and Defendants' direct role in the alleged restriction of trade. (Doc. 1 at ¶¶ 17-37). This Court likewise disagrees with Defendants' contention that Plaintiffs failed to allege a constraint on competition within the meaning of Section 1 of the Sherman Act. Plaintiff has adequately pled that the noncompete agreement restricted future competition by preventing Goforth Home and Lawn from competing with Sears and Transform. (Doc. 1 at ¶¶ 46-60).

## V. Plaintiffs adequately pled product and geographic market

The parties disagree about whether the alleged restraint on trade—enforcement of the noncompete agreement—should be treated as vertical or horizontal. A vertical restraint typically involves parties at distinct points in the production process, while horizontal restraint occurs between firms that compete at similar points in production. *New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035 (5th Cir.

2023). The distinction is relevant because it impacts the court's analysis and, depending on the circuit, pleading standards.

A horizontal restraint on trade, which creates a plainly-discernable anticompetitive impact and possesses no apparent redeeming quality, commands a *per se* analysis, which "does not allow inquiry into the intent behind the restraint, its pro-competitive justifications, or its actual effect on competition." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 773 (8th Cir. 2004) (citations omitted). On the other hand, a vertical restraint has a less clear anticompetitive effect and requires a more searching rule of reason analysis, whereby "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). In the middle are those cases that command a "quick look" approach, "in which the restraint is sufficiently threatening to place it presumptively in the *per se* class, but lack of judicial experience requires at least some consideration of proffered defenses or justifications." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 773 (8th Cir. 2004).

In the instant case, Plaintiffs advocate for a quick look approach based largely on a Seventh Circuit opinion finding, "a covenant not to compete following employment does not operate any differently from a horizontal market division among competitors—not at the time the covenant has its bite, anyway." *Polk Bros. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 189 (7th Cir. 1985). At the same time, however, other circuits have declined to apply a *per se* analysis to some noncompetition agreements. *See, e.g., Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 900–01 (9th Cir. 1983); *Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d 255, 264–65 (7th Cir.1981); *Bradford v. New York Times Co.,* 501 F.2d 51, 59–60 (2d Cir.1974).

Plaintiffs contend that "there is no requirement under the rule of reason to define the relevant market when a horizontal restraint of trade has no procompetitive justification." (Doc. 30 at 39). For support, Plaintiffs cite a Supreme Court finding that, "we have never required proof of market power in [cases that involve a naked restraint on price and output]." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 110 (1984).

Plaintiffs' position, however, appears to conflate "proof of market power" and the need for a plaintiff to "define a market and its participants." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558–59 (8th Cir. 1998). In the Fifth Circuit at least, it appears plaintiffs who allege a horizontal restraint are not necessarily required to define a relevant market. *New Orleans* at 1036. In contrast, Eighth Circuit courts appear to require all plaintiffs to define a market and its participants, regardless of whether the restraint is vertical or horizontal. *Double D* at 558-59 ("a plaintiff alleging a horizontal restraint must at least define the market and its participants"). A market definition normally includes reference to a specific product and geographic area. *Double D* at 560.

This Court finds that Plaintiffs' allegations sufficiently define a market in terms of product and geography. Plaintiffs allege the relevant product is "major home appliances," which they claim, "can be categorized into four groups based on the function of each appliance: dishwashers, laundry, cooking, and refrigerators." (Doc. 1 at ¶ 41). Plaintiffs further allege that major home appliances prove distinct from small home appliances, "because a vacuum or toaster is not reasonably interchangeable with a dryer or refrigerator." (Doc. 1 at 41). Importantly, contrary to Defendants' claim, it is not fatal to Plaintiffs' Complaint that Plaintiffs' product market includes several individual products (i.e. dishwasher and oven) that are not interchangeable amongst themselves. Indeed, the relevant concern is whether Plaintiff has sufficiently alleged a product

9

market that accounts for all reasonably interchangeable alternatives. "The boundaries of the product market can be determined by the reasonable interchangeability or cross-elasticity of demand between the product itself and possible substitutes for it." *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007) (citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Here, because the product market of major home appliances is, as Plaintiff alleges, not reasonably interchangeable with other products, Plaintiffs' pleadings on the issue are sufficient.

Similarly, Plaintiff's geographic market is satisfactorily pled. Plaintiffs allege, "the relevant geographic market is local and in this case encompasses Bolivar, Missouri…Consumers shopping for major home appliances overwhelmingly prefer local retailers....This is particularly true for consumers living in smaller rural markets like Bolivar, who value local businesses and prefer to avoid shopping for big ticket items out of town." (Doc. 1 at ¶ 42). Contrary to Defendants' argument, this is not impermissibly narrow and its exclusion of retailers in Springfield appears strategic and adequately reasoned.

### VI.    Plaintiffs' allegations survive the applicable statute of limitations

The parties appear to agree that the Sherman Act's four-year statute of limitations applies. 15 U.S.C. §15b. The parties disagree, however, as to when the clock started ticking: at the 2016 signing of the Dealer Agreement that includes the noncompete agreement or the earliest moment at which the agreement could have been enforced, namely July 6, 2019, the day on which the dealer agreement expired. The Eighth Circuit does not appear to have addressed this narrow issue directly. The Supreme Court has held, however, that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). Accordingly, this Court finds that

Case 6:23-cv-03167-MDH   Document 50   Filed 07/18/24   Page 10 of 11

Plaintiff's Complaint sufficiently alleges a violation within four years of the earliest date upon which the noncompete agreement could have conceivably been enforced, July 6, 2019, when Plaintiff alleges the dealer agreement expired.

## CONCLUSION

For foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 18, 2024

_/s/ Douglas Harpool_
**DOUGLAS HARPOOL**
**United States District Judge**

11